UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RYLAND C. GLADDING,

                            Plaintiff,

   -against-                                      7:05-CV-1505
                                                                   (LEK/GHL)

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

## DECISION AND ORDER

**I.    BACKGROUND**

    **A.    Procedural History**

Plaintiff Ryland C. Gladding ("Plaintiff") filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on November 29, 2002. Administrative Transcript ("AT") 57-59, 255-56. The applications were denied initially. AT 26, 257. A request was made for a hearing. AT 33. A hearing was held before an Administrative Law Judge ("ALJ") on October 12, 2004. AT 263-305. In a decision dated November 17, 2004, the ALJ found that Plaintiff is not disabled. AT 11-21. The Appeals Council denied Plaintiff's request for review on October 31, 2005. AT 5-7. Plaintiff commenced this action on December 2, 2005 pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner's final decision. Dkt. No. 1.

    **B.    Contentions**

Plaintiff makes the following claims:

    (1)    The Commissioner failed to properly evaluate the medical opinions of record. Dkt. No. 6 at 10-14.

    (2)    The Commissioner failed to properly determine Plaintiff's residual functional capacity. Dkt. No. 6 at 15-16.

(3) There is no substantial evidence to support the Commissioner's conclusion that there is significant work in the national or regional economies that Plaintiff could perform. Dkt. No. 6 at 17-18.

(4) The ALJ erroneously failed to properly evaluate Plaintiff's credibility. Dkt. No. 6 at 18-19.

Defendant argues that the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed. Dkt. No. 8.

**C.     Facts**

Plaintiff was forty-nine years old at the time of the hearing. AT 268-69. Plaintiff has his high school degree and completed one year of college. AT 108. Plaintiff's past work experience consists of working as a painter. AT 103. Plaintiff alleges that he became unable to work on July 14, 2001. AT 57, 255, 269. Plaintiff alleges disability due to carpal tunnel in his right hand, a "cracked skull," severe headaches, swelling and pain in his left ankle, a swollen tail bone, pain in his arms, right hip, lower back, and left hand and shoulder. AT 102.

    **1.     Taesook Kim, M.D.**

From 1993 to 1997, Plaintiff saw Taesook Kim, M.D. AT 138-51. Plaintiff was diagnosed as suffering from a pain in his left hand and lumbar muscle spasms and prescribed various medications. AT 138-40.

    **2.     Charles Moehs, M.D.**

On January 12, 1999, Plaintiff underwent a disability examination by Charles Moehs, M.D. AT 152-53. Dr. Moehs noted that Plaintiff claimed that he was hit by a bus when he was eighteen, which caused several injuries. AT 152. Dr. Moehs also noted that Plaintiff stated that he injured his right hip and left hand during an accident in 1978. AT 153. An x-ray of Plaintiff's right hip showed

mild degenerative change at the right hip joint with mild superior joint space narrowing with subchondral sclerosis of the acetabulum. AT 156. Dr. Moehs opined that Plaintiff could continue working as a painter. AT 153.

### 3. Deborah Bostic, M.D.

On March 1, 1999, Deborah Bostic, M.D. completed an RFC assessment. AT 157-64. Dr. Bostic indicated that Plaintiff was capable of lifting and/or carrying a maximum of fifty pounds occasionally; lifting and/or carrying a maximum of twenty-five pounds frequently; standing and/or walking about six hours in an eight-hour workday; and sitting for a total of six hours in an eight-hour workday. AT 158.

### 4. Massena Free Health Clinic

From August 9, 2001 to February 27, 2003, Plaintiff was treated at the Massena Free Health Clinic. AT 165-67. On August 9, 2001, it was noted that Plaintiff injured his left shoulder and was seen at an emergency room. AT 165. Plaintiff was prescribed Vicodin and Motrin, but had not filled the prescriptions. Id. He was diagnosed as suffering from left shoulder pain. Id. He was also treated for chronic low back pain and tenderness in his hips. AT 166-67.

### 5. Emergency Department of Canton-Potsdam Hospital

On January 23, 2002, Plaintiff was seen at the Emergency Department of Canton-Potsdam Hospital. AT 168-78. Plaintiff sustained a left distal radius fracture to his left wrist when he fell while ice skating. AT 169.

### 6. Donald Henline, M.D.

On January 24, 2002, Donald Henline, M.D. repaired the wrist fracture using a volar buttress T-plate. AT 173. During a follow-up visit on February 13, 2002, Dr. Henline noted that Plaintiff is "doing well, having no specific complaints. He denies any numbness or tingling in his hand." AT

3

179. Plaintiff had "good sensation to all five digits." Id. On February 27, 2002, Plaintiff exhibited a decreased range-of-motion in his wrist, but Plaintiff stated that "it is fairly close to his pre-operative state" due to a previous fracture. AT 180. On December 27, 2002, Dr. Henline stated that clinical union was present. AT 183.

### 7. Nader Wassef, M.D.

On January 2, 2003, Plaintiff underwent an orthopedic examination at the request of the agency by Nader Wassef, M.D. AT 189-92. Dr. Wassef diagnosed Plaintiff as suffering from, *inter alia*, lower back pain, and pain in the right hip area and right anterior/superior iliac spine area. AT 192. Dr. Wassef found that Plaintiff has a moderate restriction for heavy lifting and carrying and activities requiring fine manipulation of the left hand, as well as a mild restriction for standing, walking, squatting, and kneeling. Id. Dr. Wassef recommended that Plaintiff establish himself with a primary care provider because Plaintiff needs further work-up to evaluate the hip area and the right anterior/superior iliac spine, his lower back, and for pain management. Id.

### 8. Luc Perrier, M.D.

On January 8, 2003, Plaintiff was examined by Luc Perrier, M.D. AT 238-40. Dr. Perrier diagnosed Plaintiff as suffering from lumbar pain and right hip pain. AT 240. Dr. Perrier noted that x-rays of the hip and back may be beneficial. Id.

### 9. George Mina, M.D.

On July 22, 2003, Plaintiff saw George Mina, M.D., an orthopedic surgeon. AT 200. Dr. Mina noted that Plaintiff stated that he struck his lower back against a steel beam in 1992 while working as a painter, and experienced lower back pain since that time. Id. It was noted that Plaintiff stated that the pain tends to go down his right lower extremity and that he experiences numbness in his lower leg and foot. Id. Dr. Mina noted that x-rays of Plaintiff's pelvis showed no

evidence of old fractures while an x-ray of the lower lumbar spine showed minimal narrowing at the L5/S1 disc space.  Id.  Dr. Mina diagnosed Plaintiff as suffering from chronic low back syndrome with right nerve root radiculitis.  Id.  Dr. Mina prescribed physical therapy, but noted that he was unsure if Plaintiff would comply.  Id.

On September 8, 2003, Dr. Mina noted that Plaintiff continued to experience low back pain.  AT 201.  He noted that an MRI showed degenerative disc disease at L5/S1, but no herniation.  Id.  He opined that surgery was not indicated.  Id.

### 10.  Roger Sullivan, M.D.

From September 23, 2003 to March 19, 2004, Plaintiff saw Roger Sullivan, M.D.  AT 203-04, 231, 242.  Plaintiff complained of experiencing low back pain, right hip pain, and left knee pain.  AT 203.  Dr. Sullivan gave Plaintiff Vioxx and Indocin and referred Plaintiff to physical therapy and to an orthopedist.  Id.

Plaintiff also complained of experiencing shoulder problems.  AT 203.  Dr. Sullivan diagnosed Plaintiff as suffering from a left AC separation.  AT 203-04.  On October 28, 2003, Dr. Sullivan recommended that Plaintiff not work.  AT 204.

On June 14, 2004, Dr. Sullivan completed a Medical Assessment of Plaintiff's physical abilities.  AT 232-35.  He indicated that Plaintiff is able to lift and/or carry a maximum of less than ten pounds on occasional and frequent bases; able to stand and/or walk less than two hours in an eight hour workday; sit less than about two hours in an eight-hour workday; and is limited in his abilities to push and/or pull using his extremities.  AT 232-33.  Dr. Sullivan also indicated that Plaintiff has some postural, manipulative, visual/communicative, and environmental limitations.  AT 233-35.

In a questionnaire regarding Plaintiff's pain, Dr. Sullivan indicated that Plaintiff's pain is

incapacitating; that physical activity increases Plaintiff's pain to the extent that medication and/or bed rest is necessary; and that medication impacts Plaintiff's work ability to the extent that Plaintiff is restricted from the work place and is unable to function at a productive level. AT 236.

### 11. Bedros Bakirtzian, M.D.

On October 9, 2003 and November 6, 2003, Plaintiff saw Bedros Bakirtzian, M.D. for his shoulder. AT 205-06. Dr. Bakirtzian diagnosed Plaintiff as suffering from a grade 3-4 AC joint separation. AT 205. Dr. Bakirtzian prescribed a shoulder immobilizer and Vioxx. Id. He noted that Plaintiff would not be a good candidate for an AC joint reconstruction. Id. On November 6, 2003, Dr. Bakirtzian examined Plaintiff and noted that Plaintiff "has some mild tenderness on attempted mobilization and ballotment, but he has excellent shoulder motion without any significant discomfort." AT 206.

### 12. Adam Shafritz, M.D.

Dr. Bakirtzian referred Plaintiff to Adam Shafritz, M.D. for a second opinion. AT 207. Dr. Shafritz examined Plaintiff on December 15, 2003. AT 207-08. Regarding Plaintiff's wrist and hand, Dr. Shafritz opined that no surgical intervention could be performed.[1] AT 208. Regarding Plaintiff's shoulder, Dr. Shafritz performed a modified Weaver-Dunn procedure for reconstruction of Plaintiff's AC joint on February 27, 2004. AT 209-10. Following surgery, Dr. Shafritz performed two irrigation/debridements of Plaintiff's left shoulder due to an infection. AT 211-13. Dr. Shafritz recommended that Plaintiff attend physical therapy. AT 220, 244, 249.

On June 15, 2004, Dr. Shafritz noted that Plaintiff "appears to be doing fairly well." AT 245. Dr. Shafritz recommended that Plaintiff continue undergoing physical therapy. Id. He prescribed Flexeril. Id.

---

[1] An x-ray of Plaintiff's left wrist taken on March 1, 2004 showed no fracture line, but some joint space narrowing at the radiocarpal joint. AT 229.

6

On July 26, 2004, Dr. Shafritz noted that Plaintiff "is doing well. He tends to agree." AT 247. However, he found that Plaintiff was experiencing some stiffness in his shoulder and recommended that Plaintiff continue with physical therapy. Id.

## II.    DISCUSSION

### A.    Disability Standard

To be considered disabled, a plaintiff seeking DIB or SSI benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the

7

>claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. Berry, 675 F.2d at 467 (citations omitted).

In this case, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. AT 15. At the second step, the ALJ determined that Plaintiff's status post left shoulder reconstruction, residuals following a right hip fracture, mild osteoarthritis in the left hip, degenerative disc disease in the lumbosacral spine, and post-traumatic arthritis in the left wrist are severe impairments. AT 17. At the third step, the ALJ concluded that these impairments fail to meet or medically equal one of the impairments listed in Appendix 1 of the regulations. Id. At the fourth step, the ALJ concluded that Plaintiff retains the ability to lift/ carry less than ten pounds, stand/walk two hours and sit six hours in an eight-hour workday with a sit/stand option, but is unable to reach behind his back using his left arm. AT 19. The ALJ therefore concluded that Plaintiff is unable to perform his past relevant work. Id. At the fifth step, the ALJ considered the testimony of a vocational expert and concluded that Plaintiff is not disabled. AT 20.

### B.   Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing, *inter alia*, Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to

be supported by substantial evidence. Johnson, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972); see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212 (1983).

### C. Treating Physician

The medical opinions of a treating physician are given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are

not inconsistent with other substantial evidence contained in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). In Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004), the Second Circuit provided the following guidance:

> [T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts. See Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2). Here, the key medical opinions submitted by Dr. Elliott to the ALJ were not particularly informative and were not consistent with those of several other medical experts. Thus, Dr. Elliot's opinion as the treating physician does not sustain controlling weight.

Halloran, 362 F.3d at 32.

Even if the treating physician's opinion is contradicted by substantial evidence and thus is not controlling, it still may be entitled to significant weight "because 'the treating source is inherently more familiar with a claimant's medical condition than are other sources.'" Santiago v. Barnhart, 441 F. Supp. 2d 620, 627 (S.D.N.Y. 2006) (quoting Gonzalez v. Callahan, No. 94 Civ. 8747, 1997 WL 279870, at *11 (S.D.N.Y. May 23, 1997) (citing Schisler v. Bowen, 851 F.2d 43, 47 (2d Cir. 1988))). However, if not controlling, the proper weight given to a treating physician's opinion depends upon the following factors: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Omission of this analysis is considered failure to apply the proper legal standard, and is grounds for reversal of the Commissioner's determination. Schaal, 134 F.3d at 505.

Plaintiff argues that the ALJ erred by failing to afford controlling weight to Dr. Sullivan's

opinion. Dkt. No. 6 at 10-16. Defendant argues that the ALJ properly afforded less than controlling weight to this opinion. Dkt. No. 8 at 15-19.

The ALJ stated that he considered Dr. Sullivan's opinion, but afforded no controlling weight to the opinion. AT 19. The ALJ explained that there was no basis in Dr. Sullivan's treatment notes for his opinion. AT 18. Indeed, Dr. Sullivan's progress notes contain limited information. See AT 203-04, 231, 242. For instance, Dr. Sullivan diagnosed Plaintiff as suffering from low back pain and AC dislocation. Id. However, aside from Plaintiff's blood pressure and pulse, the examination findings for eight out of nine office visits state only as follows: "Lungs are clear, cardiac regular rhythm and rate and abdomen is soft. Extremities have no edema." AT 203-04, 231, 242. During the ninth, and last visit, on March 19, 2004, Dr. Sullivan made the same findings, but noted that Plaintiff's "[e]xtremities have erythema at the site of the surgery with some swelling and tenderness." AT 231, 242.

Dr. Sullivan's assessment itself fails to indicate on what evidence the Dr. Sullivan relied while rendering his opinion. See AT 232-35. For instance, when asked to state the medical/clinical findings that support the exertional limitations, Dr. Sullivan provided no response. AT 233. Similarly, when asked to state the medical/clinical findings that support the postural, manipulative, visual/communicative, and environmental limitations, Dr. Sullivan provided no responses. AT 233-35.

In addition, Dr. Sullivan's opinion is unsupported by other opinions. For instance, as noted by the ALJ, Dr. Wassef opined that Plaintiff has a moderate restriction for heavy lifting and carrying, but only a mild restriction for standing, walking, squatting, and kneeling. AT 192. Dr. Moehs also opined that Plaintiff could continue to work as a painter. AT 153. Dr. Bostic, the State agency review physician, indicated that Plaintiff is capable of lifting and/or carrying a maximum of

fifty pounds occasionally; lifting and/or carrying a maximum of twenty-five pounds frequently; standing and/or walking about six hours in an eight-hour workday; and sitting for a total of six hours in an eight-hour workday.  AT 158.

The ALJ also explained that "[i]n the absence of clarification" by Dr. Sullivan, he was not affording controlling weight to the opinion.  AT 19.  In a reply to a letter dated October 18, 2004 to Dr. Sullivan from Plaintiff's counsel, Dr. Sullivan stated that he "do[es] not do any disability exams or papers."  AT 250 (emphasis in original).

It is well-established that an ALJ has an affirmative duty to develop the record even where, as here, a claimant is represented by counsel.  Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999) (citing Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) and Echevarria v. Secretary of Health and Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)).  The regulations provide that when evidence from a treating physician is inadequate to determine whether a claimant is disabled, the treating physician will be recontacted in order to determine whether the additional information needed is readily available.  20 C.F.R. §§ 404.1512(e), 416.912(e).  However, the ALJ may not seek additional evidence or clarification from a medical source when it is known from past experience that the source either cannot or will not provide the necessary findings.  20 C.F.R. § 404.1512(e)(2), 416.912(e)(2).  Accordingly, the ALJ made no error by not contacting Dr. Sullivan regarding his opinion because Dr. Sullivan clearly stated that he "do[es] not do any disability exams or papers." AT 250 (emphasis in original).

In light of the foregoing, the ALJ properly afforded less than controlling weight to Dr. Sullivan's opinion.  Dr. Sullivan's progress notes contain limited information; Dr. Sullivan failed to state what medical/clinical findings support his opinion; and his opinion is unsupported by other opinions.  The ALJ also committed no error by not contacting Dr. Sullivan.  Thus, the ALJ's

decision in this regard is affirmed.

### D. Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. See 20 C.F.R. §§ 404.1529, 416.929; see also Foster v. Callahan, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. Id. §§ 404.1529(c), 416.929(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning

claimant's functional limitations and restrictions due to symptoms. Id. §§ 404.1529(c)(3), 416.929(c)(3).

Plaintiff argues that the ALJ erroneously failed to evaluate Plaintiff's credibility. Dkt. No. 6 at 18-19. Defendant argues that the credibility determination is supported by substantial evidence. Dkt. No. 8 at 23-25.

In her decision, the ALJ reviewed some of Plaintiff's testimony. AT 18. The ALJ then stated that she "considered" Plaintiff's allegations and found them "partially credible," but stated that "given Dr. Perrier's findings in January 2003 demonstrative of exaggeration by the claimant and no basis in the treatment notes of any physician to support Dr. Sullivan's conclusions, the claimant's assertions as to the extent of his disability are not fully credible." AT 18-19.

The Court finds that the ALJ provided an insufficient analysis of Plaintiff's credibility. While the ALJ recited some of Plaintiff's testimony, the ALJ failed to specifically state whether Plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a). The ALJ also failed to provide a clear discussion of the symptom-related factors set forth in the regulations. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Accordingly, the matter must be remanded.

**E.     RFC**

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms. Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, D.J.); see 20 C.F.R. §§ 404.1545, 416.945. "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations." Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (citation omitted).

In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding a claimant's capabilities. Martone, 70 F. Supp. 2d at 150. SSR 96-8p provides that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). SSR 96-8p, 1996 WL 374184, at *7 (SSA July 2, 1996). RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy. New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see 20 C.F.R. §§ 404.1560, 416.960.

Plaintiff argues that the RFC determination is flawed. Dkt. No. 6 at 15-16. Defendant argues that the RFC finding is supported by substantial evidence. Dkt. No. 8 at 19-21.

In her decision, the ALJ reviewed the medical evidence and found that Plaintiff retained the RFC to perform a restricted range of sedentary work.[2] AT 17-19. However, it is unclear on what evidence the ALJ relied in making this determination because the ALJ failed to provide a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). See SSR 96-8p, 1996 at *7. Moreover, aside from stating that she was affording no controlling weight to Dr. Sullivan's opinion, the ALJ failed to state the weight assigned to the other medical opinions, which was error. See 20 C.F.R. § 404.1527(d) ("Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). Sedentary work generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citation omitted).

the weight we give to any medical opinion.").

To the extent that the ALJ relied on Dr. Wassef's opinion that Plaintiff had a moderate restriction for heavy lifting and carrying, but only a mild restriction for standing, walking, squatting, and kneeling, AT 192, the ALJ should not have drawn the necessary inference that Plaintiff can perform the exertional requirements of a restricted range of sedentary work based on Dr. Wassef's vague opinion.  See Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000) (finding that consultative examiner's use of the terms "moderate" and "mild," without additional information, did not permit the ALJ to make the necessary inference that the plaintiff can perform the exertional requirements of sedentary work) (citing Balsamo v. Chater, 142 F.3d 75, 81-82 (2d Cir. 1988)).

To the extent that the ALJ relied on the opinion provided by "the Administration's medical consultant," who completed a Physical RFC assessment (Exhibit 9F), the individual who completed the assessment, G. Van Acker, is a non-physician disability examiner whose qualifications are unknown.  See AT 18, 26, 194-99.

In light of the foregoing and because the Court is remanding for a proper evaluation of Plaintiff's credibility, the Court is unable to find that the RFC determination is supported by substantial evidence.  Therefore, the matter must be remanded.

### F.     Step Five Determination

Plaintiff argues that the determination made at Step Five is not supported by substantial evidence.  Dkt. No. 6 at 17-18.  Defendant argues that this finding is well-supported.  Dkt. No. 8 at 21-22.

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing.  See Curry v. Apfel, 209 F.3d 117, 122 (2d

Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c).  "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions in the country."  20 C.F.R. §§ 404.1566(a), 416.966(a).  The ALJ may apply the Medical-Vocational Guidelines ("the grids") or consult a vocational expert ("VE").  See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2.  If a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations" the application of the grids is inappropriate.  Bapp v. Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986).

Because the Court is remanding for a proper evaluation of Plaintiff's credibility and RFC, the Court directs remand on this issue as well.  Upon remand, the ALJ shall obtain the opinion of a vocational expert if Plaintiff's nonexertional limitations present significant limitations.  See Bapp, 802 F.2d at 605-06 (holding that if a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations" the application of the grids is inappropriate).

## IV.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g)[3] for further proceedings consistent with the above; and it is further

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral

---

[3] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**; and it is further

>**ORDERED**, that the Clerk serve a copy of this Order on the parties.

>**IT IS SO ORDERED.**

DATED:     September 03, 2008
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge